GREGORY VIGEANT

v.

D. B. SCULLY.

1.  ARCHITECT'S DUTIES—INSTRUCTION.—Plaintiff brought an action for damages against an architect, claiming that certain defects in the walls of his building arose from their improper construction, and that such construction was permitted by the architect negligently and in violation of his duties as superintendent.   The contract of employment was oral, and the nature and extent of the architect's duties as superintendent were in controversy.   *Held*, that the instruction given by the court was, under the peculiar circumstances of this case, erroneous, as it virtually left the whole matter as to what it was "proper" for the architect to do, to the judgment and caprice of the jury, unrestrained by the evidence in the case.

2.  ARCHITECT ISSUING CERTIFICATES TO CONTRACTORS.—The instruction was also erroneous in announcing that the duty was imposed upon the architect to make a special inspection of the work before issuing any certificate sufficient to satisfy himself that the particular work for which the certificate was asked was done properly and in accordance with the plans and specifications.   No such duty was imposed by the terms of the contracts.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.   Opinion filed December 16, 1886.

Mr. W. J. HYNES and Mr. F. W. YOUNG, for appellant.

Mr. ARNOLD TRIPP, for appellee.

BAILEY, J.   This was an action on the case, brought by

Scully against Vigeant, to recover damages alleged to have resulted from the negligence of the defendant in the performance of his duties as architect and superintendent in the erection of certain buildings for the plaintiff. It appears that the plaintiff, being about to erect a block of buildings on the corner of Sheldon and Fulton streets, Chicago, employed the defendant, who was then engaged in the business and profession of an architect, to prepare the necessary plans, specifications, etc., and let the contracts for the various portions of the work, and superintend the erection of the buildings. In pursuance of said employment the defendant prepared said plans, etc., let the contracts, and undertook to act for the plaintiff as superintendent of the work.

The buildings were erected and finished, and, a short time after their completion it was discovered that in consequence of the imperfect construction of certain dwarf walls, upon which the interior portions of the buildings rested, the floors and interior structure had settled several inches, so as to render the buildings untenantable. The plaintiff thereupon caused them to be repaired and put in proper condition at a cost, as he claims, of about $2,900, and afterward brought this suit against the defendant. At the trial, before the court and a jury, a verdict was rendered in favor of the plaintiff, awarding him $1,441.76 damages, and a judgment was rendered accordingly.

The plaintiff claims that the defects in said walls arose from their improper construction, and that such construction was permitted by the defendant negligently and in violation of his duties as superintendent. The defendant, on the other hand, claims that after the walls were built, deep trenches were dug, partly near and partly beneath the walls, for the purpose of laying sewer pipes and constructing cold air ducts; that said ditches were carelessly and improperly filled with frozen earth, by the workmen in charge of that part of the work, and that the digging and filling of said ditches in that manner was carried on and persisted in by said workmen, with the tacit, if not the express approbation of the plaintiff, in spite of the defendant, and contrary to his express directions and protests. On

these questions the evidence was conflicting, and it would serve no useful purpose for us to analyze it with a view of determining in whose favor it preponderates.

The court, at the instance of the plaintiff, gave to the jury the following instruction:

"The jury are instructed, as a principle of law, that if a person employs an architect to draw plans for him and superintend the proper erection of buildings, and such architect is made the superintendent in the contracts between the owner and the contractors, it is the duty of such architect to exercise proper skill and care in the superintending of such buildings, and such superintendent should issue no certificate to any of the contractors, unless such work appears, upon a proper inspection, to be properly done, and to conform to the requirements of the respective contracts, plans and specifications, unless otherwise directed by the owner."

The contract by which the plaintiff employed the defendant to act as architect and superintendent was not in writing, and the precise terms of said employment are not very clearly shown. The plaintiff testifies, in substance, that he instructed the defendant to draw up plans and specifications, and let the contracts, and he admits that those duties were satisfactorily performed. He further testifies that the defendant agreed to superintend the erection of the buildings, and see that they were put up right, but admits that the details of his duties were not discussed, and that nothing was said as to how much time he was to spend at the buildings, or what he was to do there, or what was to be his compensation.

The contracts between the plaintiff and the various contractors and builders were in writing, and provided, among other things, that each contractor should do his part of the work and furnish the materials therefor, agreeably to the drawings and specifications made by said architect, in a good, workmanlike and substantial manner, to the satisfaction and under the direction of said architect, to be evidenced by a writing or certificate under his hand, and to be paid for as the work should progress; provided, that in each case the contractor should obtain a certificate from the superintendent or architect,

who should in every case retain fifteen per cent. from each estimate, such fifteen per cent. to be paid when the building should be completed and accepted; but that no certificate should be issued by said superintendent and architect unless the material should be on the ground, and the work performed in the building. The right was reserved to the plaintiff to make such changes in the plans of the buildings as he should see fit during the progress of the work, and it was provided that in case of any difference of opinion between the plaintiff and contractors in relation to the contract, the work to be performed under it, or in relation to extra work or to any alterations in the plans, drawings and specifications, the decision of said architect should be final and binding on all the parties.

The defendant, on his part, testified in substance, that at the time he was employed by the plaintiff as architect and superintendent, nothing whatever was said between himself and the plaintiff in relation to his duties in superintending the work on the building, and that he only undertook to give such superintendence as an architect usually gives; that, by universal custom among architects throughout the country, the employment and duty of an architect in superintending the erection of a building consists in acting as a general adviser, director and interpreter of the plans, and in most cases as an umpire; that he must stand ready to answer questions, and if any defect be called to his attention he must give directions to have it remedied; that he should see the bottom of the excavations before the foundations are put in, but that the number of visits to the building and the times of making them are left to his judgment; that as the work progresses, if anything is brought to his attention by the owner or contractor or by personal observation, it is his business to take proper steps in relation thereto and notify the contractor; that before issuing certificates he should visit the building and see how much work had been done, and before issuing his final certificate he should examine the work, but only so far as can be seen without tearing anything down; that if there is anything to excite his suspicion, he is to withhold the certificate until the objection is removed, or adjusted by money

Vigeant v. Scully.

differences, it being sometimes impracticable, where inferior work is done, to get it removed, and in such cases settlement must be made by deducting for inferior work; that on important buildings it is usual to have constantly at the work an overseer employed by the owner, acting under the directions of the architect, but that it is not usual to employ such overseer on such buildings as those in question in this suit.

It will thus be seen that the nature and extent of the defendant's duties as superintendent were in controversy. The contract of employment being oral, and its terms being in dispute, it was for the jury to find those terms from the evidence, and until that was done, the character and measure of the defendant's employment were undetermined. He was undoubtedly bound to exercise reasonable care and diligence in the performance of his duties, whatever they may have been, but what those duties were, was a question of fact and not of law.

We are of the opinion that under the peculiar facts of this case the foregoing instruction was erroneous. It is entirely abstract, and does not assume to submit to the jury any question of fact arising from the evidence. The care and attention the defendant had agreed to give to the plaintiff's buildings as they progressed, and the amount of supervision he undertook to exercise over the work of building, were in dispute. The instruction, however, without directing the jury to pass upon this controverted question of fact, and determine what amount of care he bound himself to bestow upon the work, held that he was bound "to exercise proper skill and care in superintending the buildings." This virtually left the whole matter as to what it was "proper" for the defendant to do, to the judgment and caprice of the jury, unrestrained by the evidence in the case. The jury, being wholly without a guide in the matter, may have been of the opinion that "proper" care involved the necessity of the defendant being constantly present as the buildings progressed, or of performing many acts which were entirely outside of the purview of his employment as shown by the evidence.

The instruction is also faulty in another respect. It held

that the defendant, as superintendent, had no right to issue any certificate to any of the contractors, unless the work appeared, upon a proper inspection, to be properly done, and to conform to the requirements of the respective contract, plans and specifications, unless by the plaintiff's direction. By the terms of the contracts between the plaintiff and the contractors, the agreed price for the work and material was to be paid as the work progressed, upon certificates from the superintendent, fifteen per cent. of each estimate to be retained, however, until the buildings were completed and accepted. The only condition or restriction imposed by the contracts upon the power or right of the superintendent to issue such certificates was the following: "No certificate shall be issued by said superintendent and architect unless the material is on the ground and the work performed in the building." These were the only facts of which the superintendent was required to inform himself before issuing any certificate except the final certificate. He was to satisfy himself merely that the materials were on the ground, and the work actually done. Fifteen per cent. of each estimate was to be retained as security for the performance of the work properly and according to the contract. But, by the rule announced in the instruction, the duty was imposed upon him to make a special inspection of the work before issuing any certificate, sufficient to satisfy himself that the particular work for which the certificate was asked was done properly and in accordance with the plans and specifications. This clearly superadded a duty not imposed by the terms of the contracts and not contemplated by the parties.

For the error in giving the foregoing instruction the judgment will be reversed and the cause remanded.

Judgment reversed.